57 A.3d 1209

**Harold G. DIEHL, Jr., Appellant**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW (ESAB GROUP, INC.), Appellee.**

Supreme Court of Pennsylvania.

Argued May 8, 2012.

Decided Dec. 28, 2012.

594

Cassie R. Ehrenberg, Regina C. Hertzig, Cleary & Josem, L.L.P., Philadelphia, for Harold G. Diehl, Jr.

Irwin William Aronson, Willig, Williams & Davidson, Harrisburg, for Appellant Amicus Curiae, PA AFL–CIO.

Gerard Matthew Mackarevich, Commonwealth of Pennsylvania, Governor's Office of General Counsel, Harrisburg, for Unemployment Compensation Board of Review.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

*OPINION*

Justice BAER.

We granted review to consider whether the "voluntary layoff option" proviso ("VLO Proviso") contained in Section 402(b) of the Unemployment Compensation Law ("UC Law"), 43 P.S. § 802(b),[1] permits employees to receive unemployment compensation benefits when they accept an early retirement plan offered pursuant to an employer-initiated workforce reduction. Upon application of our rules of statutory construction, we reverse the decision of the Commonwealth Court and conclude that the UC Law does not preclude application of the VLO Proviso to early retirement plans offered pursuant to employer-initiated workforce reductions.

Appellant Harold G. Diehl (Employee) was a sixty-three year old, twenty-three year employee of ESAB Welding and Cutting Products (Employer), where he worked as a shipping clerk. Transcript of Hearing before Unemployment Compensation Referee, June 16, 2009, at 3. In December 2008, Employer announced a reduction in force due to financial conditions and issued a memo to Employee's union, UAW Local 1968, with a list of twenty employees who would be laid-off in accordance with the Reduction in Workforce section of the contract with the union. While the list did not include Employee, who had high seniority, the memo explained that up to ten listed employees would be "retained to fill vacancies pending the results of the Early Retirement offer." Employer Memo to Union, December 19, 2008, at 2. As found by an Unemployment Compensation Referee, Employer offered employees over sixty years old an early retirement program to encourage high seniority employees to leave so that the less senior employees on the list would not be laid off. Referee Decision/Order of June 23, 2009. The terms of the offer included full payment of health insurance for three years and

1. The VLO Proviso is set forth in full *infra* at 2 n. 2.

partial payment of insurance for two years. Additionally, Employer would pay for unused vacation days, but not a severance benefit or other monetary compensation. Employee accepted the early retirement package, under the assumption that he would also receive unemployment compensation. Transcript of Hearing before Unemployment Compensation Referee, June 16, 2009, at 5.

After accepting the early retirement option, Employee sought unemployment compensation benefits. The Office of Unemployment Compensation Benefits denied his claim in a Notice of Determination, citing a portion of Section 402(b) of the Unemployment Compensation Law.[2] It determined that where a claimant's reason for separation is due to accepting the employer's voluntarily retirement offer, "in order to qualify for benefits, the burden is on the Claimant to show that he had knowledge that his job would have been affected if he did not accept the Employer's plan to voluntarily separate from employment." Notice of Determination, May 5, 2009.

Employee appealed the decision to a referee of the Unemployment Compensation Board of Review (UCBR), who presided over a hearing in June 2009. Employer did not attend the hearing but submitted a letter limited to the following statements: "The retirement packages offered to all hourly employees this year have been part of an overall reduction in force. The reductions in force have been necessary in response to deteriorating business conditions." ESAB Letter dated June 16, 2009. Subsequently, the referee affirmed the

---

**2.** Section 402(b) codified at 43 P.S. § 802(b), provides in relevant part as follows:

Ineligibility for compensation
An employe shall be ineligible for compensation for any week—

\*　　\*　　\*　　\*　　\*　　\*

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act:

\*　　\*　　\*　　\*　　\*　　\*

Provided further, That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy.

denial of benefits, citing the following language from Section 402(b): "An employee shall be ineligible for compensation for any week ... (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." Referee's Decision of June 23, 2009. Noting that Employee was not on the list of employees to be laid-off, the referee found that Employee's unemployment was not due to a necessitous or compelling reason as required by the general rule of Section 402(b), without discussing the applicability of the VLO Proviso of that section.

Employee sought review from the UCBR, which initially affirmed. Upon Employee's motion, the UCBR granted reconsideration and vacated its prior determination to address Employee's legal issue regarding the VLO Proviso of Section 402(b). As noted, the VLO Proviso states, "Provided further, That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy." 43 P.S. § 802(b). Although the UCBR granted reconsideration, it ultimately denied benefits based upon the Commonwealth Court's prior decisions, which have held that the "VLO Proviso does not apply to situations involving acceptance of severance or retirement incentives," such as the early retirement package present in the case at bar. UCBR Decision of November 10, 2009, quoting *Renda v. UCBR*, 837 A.2d 685, 694 (Pa.Cmwlth.2003).

Employee appealed the denial of benefits to the Commonwealth Court. In a published opinion, the Commonwealth Court addressed Employee's assertion that the UCBR's denial of benefits to Employee ignored the plain language of the VLO Proviso of Section 401(d) [3] and 402(b) of the Unemploy-

3. While Section 402(b) provides an exception to when a claimant would be ineligible for benefits, Section 401(d)(2), using very similar language to 402(b), affirmatively provides for the payment of benefits:

Compensation shall be payable to any employe who is or becomes unemployed, and who—

\* \* \* \*

ment Compensation Law. *Diehl v. UCBR*, 4 A.3d 816 (Pa. Cmwlth.2010). The Commonwealth Court recognized that Employee also sought reconsideration of the court's decision in *Renda*, which Employee asserted barred application of the VLO Proviso to claimants who received financial incentives. Alternatively, Employee argued that *Renda* was distinguishable because his health insurance and vacation benefits did not constitute financial incentives.

In considering Employee's challenge, the Commonwealth Court reviewed its history of addressing the VLO Proviso, which was added to the Unemployment Compensation Law in 1980. It acknowledged that it first considered the proviso in *W.R. Grace & Co. v. UCBR*, 71 Pa.Cmwlth. 86, 455 A.2d 729 (1983), in which an employee was offered the choice between accepting a transfer from the first shift to the second and third shifts or accepting a voluntary layoff with recall rights. The court in *W.R. Grace* held that application of the VLO Proviso required two elements: (1) that the employee be "otherwise eligible" for unemployment compensation benefits and (2) that the employee's unemployment be "due to exercising a voluntary layoff option either negotiated by contract or established unilaterally by the employer." *Id.* at 730.

The Commonwealth Court proceeded to review its caselaw after *W.R. Grace*, in which it repeatedly refused to apply the VLO Proviso to employees accepting early retirement programs. *See Renda v. UCBR*, 837 A.2d 685 (Pa.Cmwlth.2003), *appeal denied,* 581 Pa. 685, 863 A.2d 1151 (2004); *George v. UCBR*, 767 A.2d 1124, 1128 n. 10 (Pa.Cmwlth.2001); *Flannery v. UCBR*, 125 Pa.Cmwlth. 64, 557 A.2d 52 (1989); *Sievers v. UCBR*, 124 Pa.Cmwlth. 52, 555 A.2d 260 (1987), *aff'd per curiam,* 520 Pa. 83, 551 A.2d 1057 (1989). Accordingly, the court in the case at bar held, "based on our history of

(d)(1) Is able to work and available for suitable work: Provided, . . . (2) No otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position, pursuant to a labor-management contract, or pursuant to an established employer plan, program or policy.

43 P.S. § 801.

concluding the VLO proviso does not apply where a claimant accepts an early retirement incentive package, we decline Claimant's invitation to again revisit this issue here." *Diehl*, 4 A.3d at 822. The court did not recognize, as discussed in detail later in this opinion, that none of the cited cases provide the necessary statutory analysis of the VLO Proviso.

The court further rejected Employee's claim that the *Renda* line of cases' emphasis on the acceptance of financial incentives conflicted with the plain language of the statute. The court held that Employee's position failed to address the court's multiple holdings that the VLO Proviso does not apply to early retirement incentives packages (presumably with or without financial incentives), but instead applies only to voluntary layoffs.[4]

This Court granted Employee's petition for allowance of appeal to consider whether the VLO Proviso applies where an employee accepts an early retirement plan offered pursuant to an employer-initiated workforce reduction, and thus to review the *Renda* line of caselaw to which this Court has not previously written.

Employee observes that the plain language of the VLO Proviso instructs that a claimant shall not be denied unemployment compensation benefits for "accepting a layoff, from an available position, pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy." He disputes the Commonwealth Court's distinction between an early retirement and a voluntary layoff.

4. The Commonwealth Court nonetheless considered the parties arguments regarding whether the health care benefits constitute "financial incentives" under the *Renda* line of cases. As we overrule the *Renda* line of cases and hold the VLO Proviso applies, we need not address whether health benefits should be characterized as financial incentives.

The Commonwealth Court also addressed three other claims asserted by Employee, including a claim of estoppel related to actions of the local UC service center, a claim that an award of benefits to him would be "revenue neutral" to the UC fund, and a claim that he had a "necessary and compelling cause" for leaving his employment. The court denied relief on these claims, and Employee did not pursue these claims in his petition for allowance of appeal. Accordingly, these issues are not before this Court.

Employee contends that the plain meaning of the term "lay-off" refers to both temporary and permanent terminations, such that it can encompass retirement as well as temporary layoffs. He further observes that the VLO Proviso does not speak to retirement, but instead applies so long as the claimant is "otherwise eligible." The "otherwise eligible" language of Section 402(b) relates to, inter alia, Section 401, 43 P.S. § 801, entitled "Qualifications required to secure compensation" and listing various requirements including that the employee has been paid certain wages, has registered to work and continued to report to employment offices, and, relevantly, "[i]s able to work and available for suitable work." Employee contends that employees accepting early retirement packages may remain able and available to work, observing that many individuals "retire" from one organization without retiring from working generally.[5]

Employee further maintains that the Commonwealth Court's interpretation of the statute conflicts with the purpose of the UC Law and public policy. Employee highlights former Justice Papadakos's argument in his dissenting statement from this Court's *per curiam* affirmance of the Commonwealth Court in *Sievers*, where he argued that to deny benefits in this situation would encourage employers to adopt "sophisticated schemes" to "force early retirements" during financial downturns or when the bulk of the employees become older and achieve higher seniority. *Sievers*, 551 A.2d at 1059 (Papadakos, J., dissenting). Justice Papadakos stated, "To deny unemployment compensation benefits to employees caught in such circumstances seems to me to be contrary to the most fundamental goals of the statute." *Id.* Employee observes that the fundamental goals referenced by the dissent are set forth in Section 3 of the UC Law, providing that "[e]conomic insecurity due to unemployment is a serious men-

---

5. At argument, the UCBR did not dispute whether Employee was "able to work and available for suitable work," as no findings of fact had been made on that issue. Upon remand, the parties may need to explore this issue further to determine whether Employee is "otherwise qualified" for unemployment compensation benefits.

ace to the health, morals, and welfare of the people of the Commonwealth." 43 P.S. § 752.

Employee emphasizes that this Court has held that the eligibility sections of the UC Law should be interpreted liberally to provide a maximum amount of benefits allowable to a claimant who has experienced involuntary unemployment and that disqualification provisions should be interpreted narrowly, citing *Penflex, Inc. v. Bryson*, 506 Pa. 274, 485 A.2d 359, 365 (1984). In contrast to our guidance in *Penflex*, Employee contends that the *Renda* line of cases "restricts eligibility and expands disqualifications by imposing additional restrictions on the VLO that are not provided for in the statute by the 'plain language' of this provision." Brief of Employee at 19.

Employee also finds support in the caselaw and statutes of our sister states. He contends that several states allow unemployment benefits to employees who accept employer-initiated voluntary layoff packages, even where the layoffs involve the voluntary decision of a higher-seniority employee to accept termination, thereby permitting lower-seniority employee to remain employed. Brief of Employee at 20–24, citing, *inter alia, Ford Motor Co. v. Administrator, Ohio Bureau of Employment Services*, 59 Ohio St.3d 188, 571 N.E.2d 727, 730 (1991); *AT & T Information Systems, Inc. v. Arizona Dep't of Economic Sec.*, 154 Ariz. 236, 741 P.2d 703 (Ariz.Ct.App.1987). Although Employee acknowledges differences in the relevant statutory language of some of our sister states compared to our own, as discussed below, Employee contends that the policy of providing unemployment benefits to employees accepting early retirement applies equally in Pennsylvania.[6]

The UCBR urges this Court to affirm the decision of the Commonwealth Court and its long-standing precedent. It contends that under the general rule of Section 402, rather than the exception of the VLO Proviso, when an employee voluntarily quits and applies for unemployment benefits, the

6. The AFL–CIO files an amicus brief in support of Employee.

burden is on the employee to establish his eligibility by showing that he had a compelling and necessitous reason to leave his employment, in contrast to a case involving an employee discharged by his employer, where the burden is on the employer to prove ineligibility. It notes that in cases where employees elect early retirement packages, the Commonwealth Court has held that the employee must show a compelling and necessitous reason for accepting the offer by demonstrating that she "was justified in believing that her layoff was likely to materialize and that her job was imminently threatened." Brief of UCBR at 8, quoting *Wright–Swygert v. UCBR*, 16 A.3d 1204, 1208 (Pa.Cmwlth.2011). The UCBR observes that this burden is not insurmountable, citing a handful of cases where the Commonwealth Court has affirmed the UCBR's award of benefits where the claimants were justified in believing their positions would be in jeopardy if they did not accept the early retirement packages. *See Wright–Swygert*, 16 A.3d 1204; *Eby v. UCBR*, 157 Pa.Cmwlth. 10, 629 A.2d 176 (1993).

Turning to the application of the VLO Proviso, the UCBR emphasizes that in "case after case" the Commonwealth Court has consistently rejected the application of the VLO Proviso to employees who have voluntarily accepted severance or retirement incentive plans offered by their employers, and instead limited the VLO Proviso to cases involving temporary layoffs. The UCBR cites the Commonwealth Court's decision in *W.R. Grace*, 455 A.2d at 730, as the genesis of the limitation of the VLO Proviso to those who exercise a "voluntary layoff with recall rights," as opposed to severance or early retirement incentives. While the UCBR fails to acknowledge that the *W.R. Grace* court merely applied the VLO Proviso in a case involving a "voluntary layoff with recall rights," without speaking positively or negatively to the application of the VLO Proviso to retirement incentives, the UCBR correctly recognizes that the Commonwealth Court has repeatedly relied upon *W.R. Grace* as establishing such a limit. *See Renda*, 837 A.2d at 694 n. 9; *Flannery*, 557 A.2d at 53–54; *see also George*, 767 A.2d at 1128 n. 10 (relying upon *Flannery* ).

The UCBR observes that the Commonwealth Court recently opined,

> This Court's adoption of this narrower definition of the term "layoff" has yielded nearly three decades of rulings, rejecting consistently any argument that the VLO proviso applies to a *permanent* separation from employment, and, in particular, permanent separations accompanied by some form of consideration from the employer—*e.g.*, a severance or early retirement "package."

*Beddis v. UCBR*, 6 A.3d 1053, 1057 (Pa.Cmwlth.2010) (emphasis in original). It asserts that there is no reason to change this long-standing judicial interpretation of the VLO Proviso, when those accepting early retirement incentives can instead pursue unemployment benefits upon demonstration of a necessitous and compelling reason for retiring under the general provision of Section 402(b). The UCBR, however, fails to acknowledge that the prior Commonwealth Court decisions upon which it relies have failed to provide any statutory analysis of the VLO Proviso or explain why the prior decision in *W.R. Grace*, which did not involve an early retirement package, controls the question at bar.

The UCBR rejects Employee's claim that the plain language of the VLO Proviso requires that the provision be applied to those who voluntarily retire pursuant to an employer's plan. It argues instead that a "layoff" entails a temporary separation from employment. The UCBR contrasts our Pennsylvania statute with the plain language of statutes of our sister states which specifically include permanent reductions in force, such as Arkansas. Brief of UCBR at 14, quoting Ark.Code Ann. § 11–10–513(c)(1) ("No individual shall be disqualified under this section if he or she left his or her last work because he or she voluntarily participated in a permanent reduction in the employer's work force after the employer announced a pending reduction in its work force and asked for volunteers."). Absent such clear language, the UCBR contends that Pennsylvania's VLO Proviso does not allow benefits for those who voluntarily and permanently retire.

After rejecting Employee's plain language claim, the UCBR contends that the legislative history supports the view that the VLO Proviso was aimed only at "layoffs," which it argues refers to a temporary condition rather than a permanent one. The UCBR asserts that the 1980 VLO Proviso arose as a result of the 1965 decision of this Court in *Department of Labor and Industry v. UCBR (Lybarger)*, 418 Pa. 471, 211 A.2d 463 (1965), which affirmed the denial of benefits to claimants whose union entered into an agreement with their employer to layoff higher-seniority employees once they reached $5,000 in income for that year, so as to allow lower-seniority to be rehired for the remainder of the year, with the process to start over the following year. The Court in *Lybarger* concluded that the work-sharing program was a "scheme ... to invade the [Unemployment Compensation Fund] for purposes other than those for which it was designed," and disallowed it. *Id.* at 470. In response, the UCBR contends, the legislature added the VLO Proviso to abrogate *Lybarger* and allow for unemployment benefits in cases where unemployment resulted from a work-sharing provision of a collective bargaining agreement. Without substantial explanation, the UCBR argues that the VLO Proviso was therefore aimed at addressing only temporary layoffs.

The UCBR further disputes Employee's reliance on the policy arguments provided by Justice Papadakos in *Sievers*, noting that the arguments were in dissent. In contrast, it argues: "[T]o allow Claimant, with no realistic fear of losing his job, to elect early retirement in return for a financial incentive would be contrary to the purpose of the Law. The intent of the Law ... is to insure that employees who have become unemployed *involuntarily* are provided some semblance of economic security." Brief of UCBR at 25 (emphasis in original). It notes that those "deserving claimants who have little choice but to take a retirement buyout from their employer because of imminent fear of losing their positions" are already covered by the general provision of Section 402(b) requiring demonstration of a necessitous and compelling reason, without the need to fall under the VLO Proviso. Brief of

UCBR at 26. Accordingly, the UCBR asks us to affirm the decision of the Commonwealth Court, applying its long standing precedent.

 Generally, when reviewing unemployment compensation cases, an appellate court must consider "whether the findings of fact are supported by substantial evidence and whether there was a violation of the constitution or agency procedure or an error of law." *Temple University v. UCBR*, 565 Pa. 178, 772 A.2d 416, 418 n. 1 (2001). The issue before this Court is a question of law involving the statutory language of the VLO Proviso; accordingly, our standard of review is *de novo* and the scope of review is plenary. *Slippery Rock Area School Dist. v. UCBR*, 603 Pa. 374, 983 A.2d 1231, 1236 (2009).

Under our rules of statutory construction, our goal is to ascertain and effectuate the intent of the Legislature, recognizing that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). We must interpret words in a statute according to their "common and approved usage." 1 Pa.C.S. § 1903. When the words of a statute are not explicit, we may ascertain the intent of the General Assembly by considering among other things the occasion and necessity of the statute and the mischief to be remedied. 1 Pa.C.S. § 1921(c).

While this Court has not considered the language of the VLO Proviso, we have set forth standards of interpreting the UC Law generally. In *Penn Hills School District v. UCBR*, 496 Pa. 620, 437 A.2d 1213 (1981), we determined that a school bus driver was entitled to unemployment compensation benefits for repeated school cancellations due to snow. The question turned on whether the bus driver was "able to work and available for suitable work" pursuant to Section 401 of the UC law, 43 P.S. § 801(d)(1). In that case, we deemed the UC Law's declaration of public policy in Section 3 "not merely a perfunctory preface" but rather "the keystone upon which the individual sections of this Act must be interpreted and con-

strued." *Penn Hills School District,* 437 A.2d at 1215 (internal citation omitted). Section 3 provides:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752. We explained, "Mindful of this remedial, humanitarian objective, the courts have always interpreted the benefits sections liberally and broadly to alleviate the distress of the involuntarily unemployed." *Penn Hills School District,* 437 A.2d at 1215. We concluded that "a cardinal principle of construction" of the UC Law required that benefits could only be denied by explicit language excluding the worker from coverage. *Id.* We further recognized that under the Act "there exists a presumption that an unemployed worker who registers for unemployment is eligible for benefits." *Id.* at 1216. We additionally indicated that this presumption holds "whether the unemployment be of a permanent or temporary nature." *Id.* Applying these presumptions to the case, this Court concluded that the Commonwealth Court had inappro-

priately imposed disqualification factors relating to the brevity of school bus driver's unemployment and her intention to return to work that were not explicitly provided by the UC Law. We reversed, concluding that by imposing such factors the court was engaging in "judicial legislation." *Id.*

We reiterated these interpretive considerations in *Penflex*, 485 A.2d 359. *See also Gillins v. UCBR*, 534 Pa. 590, 633 A.2d 1150, 1155 (1993). We emphasized that "the eligibility sections of the law must be liberally interpreted to provide the maximum amount of benefits allowable under the statute to a claimant who has experienced involuntary unemployment." *Penflex*, 485 A.2d at 365. "Conversely, disqualification provisions, such as Section 402(e), should be narrowly construed and a claimant must not be denied compensation unless he is unequivocally excluded by the plain language of these provisions." *Id.* at 365.

▮▮▮ With these interpretive guidelines in mind, we turn to the language of the VLO Proviso. The general rule provided in Section 402(b) is that an employee is ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). Thus, under this general provision alone, an employee who voluntarily accepts a layoff offer (either permanent or temporary) would not eligible for compensation, absent a showing of a compelling and necessitous reason.[7] In 1980, however, the General Assembly added the VLO Proviso to introduce a limited exception to this general rule, stating "Provided further, That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a

7. As noted, the Commonwealth Court and the UCBR have granted benefits to employees who accepted early retirement packages based upon a legitimate fear that they would be terminated if they did not accept the package. These employees fit under the general provision of Section 402(b)'s necessitous and compelling reason and do not need to satisfy the VLO Proviso. There is no question that Employee in this case did not accept the early retirement package with the fear that he would lose his job if he did not accept it. Therefore, to qualify for benefits, he must fall under the VLO Proviso.

labor-management contract agreement, or pursuant to an established employer plan, program or policy." *Id.* Not only does the UC law provide an exception to the general language of Section 402(b), but it utilizes the same language to provide benefits affirmatively to those accepting a layoff in Section 401:

Compensation shall be payable to any employe who is or becomes unemployed, and who—

\* \* \* \*

(d)(1) Is able to work and available for suitable work: Provided, . . .

(2) No otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position, pursuant to a labor-management contract, or pursuant to an established employer plan, program or policy.

43 P.S. § 801. In this case, we must determine whether the term "layoff" applies to early retirement packages, or only to temporary separations, such as a layoff with recall rights.

The UC Law does not define the term "layoff," nor does any portion of Section 402 address the concept of retirement. We, nonetheless, recognize that in common parlance, the term "layoff" can refer to both temporary and permanent separations initiated by the employer. *See Black's Law Dictionary* 614 (Abridged 6th ed. 1991) ("A termination of employment at the will of the employer. Such may be temporary (e.g. caused by seasonal or adverse economic conditions) or permanent."); The American Heritage Dictionary 482 (4th ed. 2001) ("Dismissal of employees, esp. for lack of work"). Given that we must interpret words in a statute according to their "common and approved usage," 1 PA.C.S. § 1903, and because we must interpret eligibility provisions broadly in favor of the employee, we agree with Employee that the VLO Proviso is not limited to temporary separations. *Cf. Penn Hills School District,* 437 A.2d at 1216 ("Absent such evidence demonstrating that the claimant is specifically disqualified by some explicit section of the Act, the unemployed claimant is

eligible for benefits. Further, this result obtains whether the unemployment be of a permanent or temporary nature.").

The next question is whether the VLO Proviso applies to those accepting early retirement offers, or as the Commonwealth Court has found, only to employees accepting layoff offers with recall rights. As discussed below, the Commonwealth Court has answered this question consistently focusing on the distinction between temporary layoffs and permanent retirements but without performing the necessary statutory analysis.

As noted above, much of the Commonwealth Court's precedent related to the VLO Proviso originates in a very brief opinion in *W.R. Grace v. UCBR*, 71 Pa.Cmwlth. 86, 455 A.2d 729 (1983), where the court found the VLO Proviso applied to an employee who accepted a layoff offer with recall rights. As a result of needing to reduce its hours of production, the employer offered the employee a choice between continued employment during a less desirable shift or a voluntary layoff with recall rights under an established employer plan. The employee chose to take the voluntary layoff due to child-care concerns.

In *W.R. Grace*, the court concluded that the language of the VLO Proviso unambiguously provided that "what might otherwise be a basis for ineligibility, leaving work without a necessitous and compelling cause, is irrelevant so long as: (1) the employee is 'otherwise eligible' for unemployment compensation benefits; and (2) his unemployment is due to exercising a voluntary layoff option either negotiated by contract or established unilaterally by the employer." *Id.* at 730. Acknowledging our stated presumption that an unemployed worker is able and available for work and thus eligible for benefits, the Commonwealth Court rejected the employer's assertion that the employee should not receive unemployment benefits for voluntarily removing herself from employment by accepting the layoff offer for personal reasons. *Id.* at 731 (citing *Penn Hills School District*, 437 A.2d at 1213).

As a backdrop to the Commonwealth Court's later holdings, we note that facts provided by the court in *W.R. Grace* do not

imply that the employee was at any risk of being fired if she did not accept the layoff offer. Moreover, the opinion contains no implication that the VLO Proviso is restricted to temporary layoffs with recall rights, as opposed to retirement.

The Commonwealth Court next cited the VLO Proviso in *Sievers v. UCBR*, 124 Pa.Cmwlth. 52, 555 A.2d 260 (1987), where the employee accepted a voluntary separation package, termed an "operation leveraging and streamlining plan," which was implemented to avoid involuntary staff reductions. The Commonwealth Court emphasized that the employee did not know whether he would be terminated if he did not accept the offer and, in fact, no employees were actually involuntarily terminated because enough employees accepted the separation offer. The court concluded that Claimant voluntarily and permanently terminated his employment, and thus affirmed the denial of benefits. The court, however, did not discuss the language of the VLO Proviso or this Court's presumption in favor of finding eligibility. Instead, it merely noted that the burden of proving eligibility generally under Section 402(b) is on the claimant, citing *Genetin v. UCBR*, 499 Pa. 125, 451 A.2d 1353 (1982), which did not involve the VLO Proviso. Indeed, the court did not even cite *W.R. Grace.*[8]

The Commonwealth Court next addressed the VLO Proviso in *Flannery v. UCBR*, 125 Pa.Cmwlth. 64, 557 A.2d 52 (1989), in which an employee accepted an "advanced retirement package," even though continuing work at the company was available. Citing the employee's testimony that the program was voluntary and that his employment was not otherwise at risk, the court concluded that the advanced retirement package was not a voluntary layoff offer, citing *Sievers*. Without analyzing

---

8. In *Sievers*, 551 A.2d 1057, this Court affirmed *per curiam* without analysis. Justice Papadakos joined by Justices Larsen and Stout dissented, concluding that the claimant should have received benefits under the VLO Proviso in part, because the so called "voluntary" termination plan was not voluntary, but rather involved the threat that the workforce would be cut by thirty percent, which could have included the claimant. Although the majority of the justices affirmed the denial of benefits, we provided no analysis or direction to the bench and bar regarding the VLO Proviso.

the language of the VLO Proviso, the court incongruously concluded that the employee failed to meet the second prong of *W.R. Grace,* requiring the exercise of a "voluntary layoff option", because the employee's decision was voluntary and his employment was not at risk. The court did not attempt to distinguish the facts of *W.R. Grace* or recognize that the employee in *W.R. Grace* was granted benefits pursuant to the VLO Proviso even though her choice, like Flannery's, was voluntary and her employment was not immediately threatened. Unlike the case at bar, it is unclear whether the employer in *Flannery* offered the early retirement plan as part of a workforce reduction.

The Commonwealth Court also addressed the question of early retirement offers in *George v. UCBR,* 767 A.2d 1124 (Pa.Cmwlth.2001). The employer in *George* offered employees "voluntary separation or early retirement incentives" as part of a reduction in force which would effect 500 employees and would not be based on seniority. The claimant in *George* accepted the offer, fearing his job would be one of those cut. Primarily, the claimant argued that he satisfied the "necessitous or compelling cause" portion of Section 402(b), which the court rejected based on facts found by the lower tribunals. Nevertheless, it appears that the claimant at least referenced the VLO Proviso in his argument. In a footnote addressing this secondary VLO Proviso argument, Commonwealth Court, citing *Flannery,* opined that the VLO Proviso "does not apply to situations involving acceptance of severance or retirement incentives," again without any analysis of the language of the VLO Proviso. *Id.* at 1128 n. 10.

The court next addressed the issue in *Renda v. UCBR,* 837 A.2d 685 (Pa.Cmwlth.2003). In *Renda,* the applicable collective bargaining agreement required the employer to offer "income security plans" prior to any layoff. An income security plan was defined as an offer under which an eligible employee can decide voluntarily to leave the company and receive certain benefits. The claimants in *Renda* asserted, as in *George,* that there was a "necessitous and compelling cause" for voluntarily terminating their employment, which the Commonwealth Court rejected. As an alternative argument, the

claimants asserted that the VLO Proviso applied. The court explained and rejected the argument in a mere three paragraphs, refusing to overrule *Sievers*. The court, as in *Sievers*, found the VLO Proviso inapplicable because the claimants voluntarily terminated their employment when continuing work was nonetheless available, citing *Sievers*, *George*, and *Flannery*. Although the court cited *W.R. Grace*, it failed to recognize that the *W.R. Grace* claimant received unemployment benefits even though she voluntarily accepted the layoff plan despite the availability of continued employment.

In a recent decision of the Commonwealth Court, *Beddis v. UCBR*, 6 A.3d 1053 (Pa.Cmwlth.2010), the court addressed the application of the VLO Proviso to early retirement offers with more rigorous analysis than any prior decision. It considered the term "layoff" and acknowledged that the common meaning of the term applies to both temporary and permanent terminations of employment. *Id.* at 1057. It nonetheless recognized that the court's precedent since *W.R. Grace* has consistently rejected "any argument that the VLO proviso applies to a *permanent* separation from employment, and, in particular, permanent separations accompanied by some form of consideration from the employer . . ." *Id.* (emphasis in original). The court accurately summarized the precedent, without indicating that the Commonwealth Court's decisions have never included statutory analysis. Instead, it observed, "Our precedent has neither invited Supreme Court scrutiny nor corrective action by our General Assembly." *Id.* at 1059. The court also recognized that the claimant in *Beddis* failed to present any compelling argument to overturn its line of cases.

Given the absence of statutory analysis in prior Commonwealth Court decisions, this Court must consider the relevant language of the VLO Proviso to determine whether it applies to employees accepting early retirement packages offered by their employers as part of a workforce reduction. We conclude that the VLO Proviso, as a section providing eligibility, should be interpreted broadly in favor of the claimant pursuant to our holdings in *Penn Hills School District* and *Penflex*. Moreover, even if we were to consider the VLO

Proviso as a disqualification section, we would still have to construe the disqualification aspects of the section narrowly and refuse to deny compensation absent unequivocal language. *Penflex*, 485 A.2d at 365.

The language of the VLO Proviso provides that "no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy." 43 P.S. § 402(b). As acknowledged in the name given to the provision, the "voluntary" layoff option forbids the denial of UC benefits merely because an employee has accepted, voluntarily, a plan offered by the employer. Accordingly, to the extent the Commonwealth Court has refused to apply the VLO Proviso because employees voluntarily accepted early retirement packages or because their jobs were not in danger if they did not accept the package, we reject that analysis which is not supported by the language of the statute requiring an employee's "acceptance" of the layoff option and the existence of "an available position." [9] Instead, the General Assembly clearly intended those that fall within the VLO Proviso to be equated not with employees who "voluntarily leave work without a necessitous and compelling reason," but rather with the "involuntarily unemployed" who are protected pursuant to the declaration of policy set forth in Section 3.

 The question remains whether the option to accept an early retirement plan offered pursuant to an employer-initiated workforce reduction is the equivalent of "an option of accepting a layoff," as set forth in the VLO Proviso. As the UCBR itself acknowledges, the meaning of the term layoff "is not clear, and it is not free from ambiguity." Brief of UCBR at 14. The UCBR, however, fails to recognize that our

9. The Dissent apparently would also limit the "voluntary layoff option" proviso to "involuntary layoff[s]," Dissenting Opinion at 616–17, 57 A.3d at 1223 (Eakin, J. dissenting), and require evidence that the employee's position "would have been cut," *id.* at 617, 57 A.3d at 1223, without discussing the proviso's language regarding "exercising the option of accepting a layoff, from an available position," 43 P.S. § 802(b).

caselaw requires us to interpret ambiguity in eligibility sections in the claimant's favor. *Penflex,* 485 A.2d at 365. As noted above, *Black's Law Dictionary* defines a layoff as "A termination of employment at the will of the employer. Such may be temporary (*e.g.* caused by seasonal or adverse economic conditions) or permanent." *Id.* at 614 (Abridged 6th ed.1991). The early retirement package in the case at bar appears to fit within this definition given that it is clearly a termination of employment that was offered at the will of the employer.

Here, Employer initiated and announced a workforce reduction in accordance with its contract with the union, naming twenty employees who would be discharged on a date certain, with a sub-list of ten individuals who would be "retained to fill vacancies pending the results of the Early Retirement Offer." Employer Memo of December 19, 2008. Had Employee not accepted the early retirement offer, another less-senior employee would have been laid off and would have been eligible for unemployment compensation. Given that we must interpret eligibility sections broadly in favor of the employee, we find no language that prevents the interpretation of the term layoff to include this employer-initiated, early retirement packages offered pursuant to a workforce reduction.

Moreover, we recognize that several of our sister states have specifically included early retirement packages in provisions equivalent to Pennsylvania's VLO Proviso. For example, Arkansas's statute provides:

(1) No individual shall be disqualified under this section if he or she left his or her last work because he or she voluntarily participated in a permanent reduction in the employer's work force after the employer announced a pending reduction in its work force and asked for volunteers.

(2) Such actions initiated by the employer shall be considered layoffs regardless of the incentives offered by the employer to induce its employees to volunteer.

Ark.Code Ann. § 11–10–513(c). While the VLO Proviso in Section 402(b) is not as clear as some of our sister states in

providing benefits to those accepting early retirement packages, given our longstanding caselaw construing eligibility provisions broadly, we conclude that the VLO Proviso applies to employees accepting employer offered early retirement packages as part of a labor force reduction, because such programs are merely a different way to accomplish the workforce reduction of a layoff. If the legislature wishes to preclude eligibility to those accepting early retirement packages as part of an employer's plan or a labor-management contract agreement, it must specify its intent clearly.

Accordingly, we overrule the longstanding interpretation of the Commonwealth Court precluding employees who accept their employer's early retirement packages from receiving unemployment compensation benefits. We instead conclude that the VLO Proviso of Section 402(b) of the Unemployment Compensation Law, 43 P.S. § 802(b), applies to an "otherwise eligible claimant" who accepts an early retirement plan offered pursuant to an employer-initiated workforce reduction. *See* 43 P.S. § 801. Therefore, we reverse the decision of the Commonwealth Court and remand to that court for further proceedings in this matter not inconsistent with this opinion.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices SAYLOR and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a dissenting opinion in which Justice TODD joins.

Justice SAYLOR, concurring.

I join the majority opinion, including its holding that the voluntary layoff proviso may embrace, in appropriate circumstances, a termination that an employer labels an "early retirement option." I write separately to elaborate that, regardless of the employer's characterization of the termination as a retirement option or a layoff, an employee who accepts a qualifying offer will be "otherwise eligible" for

compensation only if he remains within the labor pool (*i.e.*, becomes unemployed), and not if he elects to separate from the workforce (*i.e.*, retires). *See* 43 P.S. § 801 (providing that, to be eligible for compensation, an unemployed employee must, *inter alia*, actively search for employment and be able to work and available for suitable work). In my view, this determination turns on "the factual matrix at the time of separation," rather than on the terminology utilized to classify that separation. *Warner Co. v. UCBR (Gianfelice)*, 396 Pa. 545, 551, 153 A.2d 906, 909 (1959) (addressing eligibility for unemployment compensation in the context of a collective bargaining agreement); *see also Hussey Copper Ltd. v. UCBR*, 718 A.2d 894, 899 (Pa.Cmwlth.1998) ("[T]he relevant inquiry in determining the cause of a claimant's unemployment is confined to the surrounding circumstances existing at the time of the claimant's departure.") (citations omitted). As such, and in line with the majority's suggestion, I believe that this case should be remanded for further findings as to whether Appellant is otherwise eligible for benefits. *See* Majority Opinion, at 600 n. 5, 57 A.3d at 1213 n. 5.

Justice EAKIN, dissenting.

I agree the term layoff means "termination of employment at the will of the employer." Majority Op., at 604–06, 607–10, 57 A.3d at 1216–17, 1218–19. I do not believe, however, that interpreting eligibility sections liberally makes "layoff" so broad as to include retirement. Retirement, which is not defined in the UC Law, in its common usage means "[v]oluntary termination of one's own employment or career, esp. upon reaching a certain age[.]" Black's Law Dictionary 1342 (8th ed.2004). For all the parsing and shoehorning of language, these two terms remain quite disparate. "Liberal interpretation" of eligibility is not alchemy, and cannot turn a voluntary retirement into an involuntary layoff. One term encompasses termination at the will of the employer, and one encompasses termination at the will of the employee-unemployment compensation is intended for the former, not the latter.

In the present case, Employer pursued a two-fold approach: seeking to lay off up to 20 employees and offering early

retirement packages to employees over 60 years old. The two strategies, although related, are distinct and separate from each other. In fact, Employee accepted a retirement package, not a layoff. There is no evidence his position would have been cut—in fact, the evidence shows he was *not* forced to accept the retirement package. Whatever his altruistic motivations, unemployment compensation is designed for those who lose their job, not those who voluntarily leave their job.

There is no indication the General Assembly, at the time it added the VLO Proviso, considered it as synonymous with retirement. Given the practical and legal consequences of the differences between the two terms, I believe the VLO Proviso should be applied only to employees that are laid off, and not to those who freely accept a retirement package.

Justice TODD joins this dissenting opinion.