**NAVAL SURFACE WARFARE CENTER CARDEROCK DIVISION, Petitioner**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted July 11, 2014.

Decided Dec. 12, 2014.

Howard B. Rein, Philadelphia, for petitioner.

Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

tion insurance, on pain of assuming secondary liability for benefits payment upon a default.
*Six L's,* 44 A.3d at 1158–59.

OPINION BY Senior Judge JAMES GARDNER COLINS.

Naval Surface Warfare Center, Carderock Division (Employer) petitions for review of the October 31, 2013 order of the Unemployment Compensation Board of Review (Board) granting Edward L. Hilferty, Jr. (Claimant) unemployment compensation benefits. The issue before this Court is whether Section 402(b) of the Unemployment Compensation Law (Law)[1] renders Claimant ineligible to receive unemployment compensation because he did not have a necessitous and compelling reason for voluntarily leaving his employment or whether Claimant remained eligible for benefits under the "Voluntary Layoff Option" (VLO) because his separation from employment was due to his acceptance of a layoff pursuant to an established employer plan. For the reasons that follow, we hold that Claimant's voluntary retirement did not render him ineligible to receive unemployment compensation benefits and we affirm the order of the Board.

Claimant filed an initial internet claim for unemployment compensation on December 1, 2012. (Record Item (R. Item) 2.) On January 2, 2013, the Department of Labor and Industry issued a Notice of Determination finding Claimant ineligible to receive unemployment compensation under Section 402(b) of the Law, 43 P.S. § 802(b). (R. Item 5.) Claimant appealed the determination and a hearing was held before a Referee on February 7, 2013. (R. Item 9, Referee Hearing Transcript (Referee H.T.).) Claimant appeared *pro se* and testified; Employer, represented by counsel, presented the testimony of Benedict Zekas, Division Head for Propulsion and Power Systems, and Karen Egan, Human Resources Specialist and Voluntary Early Retirement Authority and Voluntary Separation Incentive Pay Coordinator. (R. Item 9, Referee H.T. at 1.) Following the hearing, the Referee issued a decision and order concluding that Claimant was eligible to receive benefits, and reversed the earlier determination. (R. Item 10.) Employer appealed and on March 28, 2013, the Board affirmed the Referee's decision. (R. Item 12.) Employer filed a request for reconsideration; the Board granted Employer's request for reconsideration on April 29, 2013, vacated its earlier decision and scheduled a hearing with a Referee acting as a hearing officer for the Board.[2] (R. Item 15.)

The remand hearing was held on May 17, 2013. (R. Item 17, Board Hearing Transcript (Board H.T.).) Claimant, who appeared with counsel, testified. (*Id.*) Mr. Zekas and Ms. Egan offered additional testimony for Employer. (*Id.*) Following the remand hearing, the Board issued a new decision and order in which it adopted and incorporated the findings and conclu-

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

2. The Board also issued a remand memo to the Referee acting as a hearing officer with, *inter alia,* the following instructions:

   The *sole* purpose of this hearing is to establish additional testimony and evidence regarding [Employer's] contention, made in its request for reconsideration of the Board's order, that its retirement was not part of a workforce reduction.

   The Referee should try to limit the introduction of repetitious or irrelevant matters. Answers to the following questions, *in addition to the above information,* would be helpful:
   1. Was [Employer] making efforts to reduce its workforce at the time it introduced, and [Claimant] accepted, the voluntary early retirement plan?
   2. Did [Employer] intend to eliminate [Claimant's] position or the positions of other employees who accepted the terms of the voluntary early retirement plan?

   (R. Item 14 (emphasis in original).)

sions in the Referee's initial decision, and affirmed the Referee's order. (R. Item 18.) The facts adopted and incorporated by the Board are as follows:

1. For purposes of this appeal, the Claimant was employed as a full-time Statistician with Naval Surface Warfare Center earning $107,659 per year. The Claimant began employment in 1988, and last worked on September 30, 2012.

2. Sometime in May 2012, the Employer offered a voluntary early retirement program to various employees, including [Claimant].

3. The Claimant chose to accept the Employer's voluntary early retirement plan, thereby voluntarily leaving his employment.

4. The Claimant received a financial incentive upon accepting the VERA.[3]

5. After the Claimant's last day of work, the [Claimant] has continued to attempt to secure other employment as a contractor, and has also been on other job interviews.

6. The Claimant voluntarily left employment with Naval Surface Warfare Center to accept the Employer's offer of a voluntary early retirement.

7. Had the Claimant not accepted the Employer's offer, continued work was available to the Claimant.

(R. Item 10, Referee's Decision and Order, Finding of Facts ¶¶ 1–7; R. Item 18, Board's Decision and Order.) The Board also found that although Employer's "plan was not explicitly intended to reduce the raw numbers in the workforce.... the 're-

shaping' of the workforce as described by [Employer's] witness by definition reduced [Employer's] personnel costs by replacing high-seniority workers with lower-seniority ones, or even brand-new replacements. This had the practical effect of being a 'workforce reduction.'" (R. Item 18, Board Op. at 2.)

To reach its conclusion that the VLO language included in Section 402(b) of the Law, 43 P.S. § 802(b), applied to Claimant and that therefore Claimant did not have the burden of demonstrating a necessitous and compelling reason for voluntarily leaving his employment in order to remain eligible for unemployment compensation, the Board relied upon our Supreme Court's holding in *Diehl v. Unemployment Compensation Board of Review (ESAB Group, Inc.)*, 618 Pa. 592, 57 A.3d 1209 (2012). (R. Item 18, Board Op. at 2.) The Board concluded that because the retirement offer made to Claimant was offered as a part of an established plan by Employer that had the practical effect of a workforce reduction Claimant was eligible for unemployment compensation. (*Id.*) Following the Board's affirmance, Employer appealed its decision and order to this Court.4

Section 402(b) of the Law provides that an employee shall be ineligible for unemployment compensation in any week in which unemployment is due to voluntarily leaving work without cause of a necessitous and compelling reason. 43 P.S. § 802(b). However, the VLO Provision within Section 402(b) cautions:

---

**3.** VERA is an acronym, used interchangeably in the record, for Voluntary Early Retirement Authority and Voluntary Early Retirement Act. (*See, e.g.*, R. Item 9, at 12.)

**4.** This Court's scope of review of an order issued by the Board is limited to determining whether constitutional rights were violated,

whether an error of law was committed, and whether necessary findings of facts are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 625 A.2d 622, 624 (1993).

Provided further, That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy.

*Id.*[5] In *Diehl*, the Pennsylvania Supreme Court examined the language of the VLO Provision and the intent of the General Assembly, as expressed in Section 3 of the Law.[6] The Court highlighted the broad humanitarian objective of the Law expressed in Section 3, and recognized that a cardinal principle of the Law is that the eligibility sections must be construed liberally and the disqualification sections construed narrowly so that an unemployed worker shall be denied benefits only where the plain language of the Law unequivocally excludes the worker from receiving unemployment compensation. *Diehl*, 57 A.3d at 1217–1218; *see also Penn Hills School District v. Unemployment Compensation Board of Review*, 496 Pa. 620, 437 A.2d 1213, 1216 (1981) ("In determining whether a disqualification is appropriate, the test is not whether the claimant has taken himself out of the scope of the Act but whether the Act specifically excludes him from its provisions. This is what is meant by a liberal and broad construction.") (internal quotations omitted).

In analyzing the statutory language of the VLO Provision, the Court specifically focused in *Diehl* on the use of the words "voluntary" and "layoff." 57 A.3d at 1221, 1222. The Court concluded that the use of the word "voluntary" evinced a clear intent by the General Assembly to equate workers who voluntarily accept an early retirement package, even where their jobs are not in danger, with workers who are involuntarily unemployed. *Id.* at 1221. The Court stressed that Section 402(b) establishes an exclusionary rule for claimants who have left employment without a necessitous and compelling reason, but that the VLO Provision is an eligibility carve-out from this disqualification provision that must be construed broadly in favor of the claimant seeking unemployment compensation. *Diehl*, 57 A.3d at 1221.

Examining the use of the word "layoff" in the VLO Provision, the Court concluded that while the boundary of the term was

**5.** The language "otherwise eligible" refers to the qualifications contained in other sections of the Law that a claimant is required to satisfy in order to be eligible for unemployment compensation, such as being able and available for suitable work. *See, e.g.*, Section 401 of the Law, 43 P.S. § 801. The parties do not dispute that Claimant is otherwise eligible for unemployment compensation.

**6.** Section 3 states: "Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." 43 P.S. § 752.

ambiguous, the term unambiguously encompassed "a termination of employment that was offered at the will of the employer." *Id.* at 1222. The Court also concluded that the use of the term "layoff" did not distinguish between a separation from employment that was temporary, such as a layoff with recall rights, and one that was permanent, such as an early retirement offer. Looking at the VLO language as a whole, the Court stated that "the VLO Proviso applies to employees accepting employer offered early retirement packages as part of a labor force reduction, because such programs are merely a different way to accomplish the workforce reduction of a layoff." *Id.* at 1222.

Drawing on the declaration of public policy in Section 3 of the Law, the structure of Section 402(b), and the specific language of the VLO Provision, the Court held in *Diehl:*

> We overrule the longstanding interpretation of the Commonwealth Court precluding employees who accept their employer's early retirement packages from receiving unemployment compensation benefits. We instead conclude that the VLO Proviso of Section 402(b) of the [Law], 43 P.S. § 802(b), applies to an "otherwise eligible claimant" who accepts an early retirement plan offered pursuant to an employer-initiated workforce reduction.

57 A.3d at 1222. The facts in *Diehl* demonstrate that the "layoff" was pursuant to a "labor-management contract agreement," and that it was offered by the employer to reduce its workforce. *See* Section 402(b), 43 P.S. § 802(b). The "layoff" accepted by the claimant in *Diehl* was "in accordance with the Reduction in Workforce section of the contract with the union" and included an offer of early retirement to employees over sixty years old "to encourage high seniority employees to leave so that the

less senior employees on the list would not be laid off." 57 A.3d at 1211. The Court did not hold, however, that these facts must be present in order for a claimant to remain eligible for unemployment compensation under the VLO Provision, stating instead that "we find no language that prevents the interpretation of the term layoff to include this employer-initiated, early retirement packages offered pursuant to a workforce reduction." *Id.* at 1222. Therefore, the question this Court must ask is whether there is substantial evidence in the record that Claimant was "exercising the option of accepting a layoff," pursuant to an employer-initiated plan. Section 402(b) of the Law, 43 P.S. § 802(b).

In the instant matter, Employer argues that Claimant is ineligible to receive unemployment compensation benefits because, unlike the claimant in *Diehl,* the early retirement offer to Claimant was not a part of a force reduction, but part of an effort by Employer to reshape the workforce and correct skills imbalances. The Board disagrees and there is substantial evidence in the record to support the Board's determination that Claimant remains eligible for unemployment compensation benefits under the VLO Provision.

Employer's argument boils down to the differences between two of its plans: reduction in force, or RIF, and voluntary early retirement authority, or VERA. (R. Item 17, Board H.T. at 7–8.) Under a RIF, employment is unilaterally terminated. (*Id.*) Under the VERA plan at issue here, termination of employment is incentivized and voluntary. (*Id.*) Under a RIF, a specific position is identified and abolished. (*Id.*) Under the VERA plan, a specific person is identified and the person's position is only abolished if the employee accepts the early retirement offer. (*Id.*) Employer argues that unemployment com-

pensation benefits are only available when employment is terminated due to a RIF. This interpretation of the Law conflicts with the plain language of the VLO Provision and was unequivocally rejected in *Diehl*, where our Supreme Court overruled this Court's precedent and made clear that the VLO Provision applies when a layoff is voluntary. *Id.* at 1221. Following *Diehl*, the issue of whether the separation was forced and whether a claimant's decision was motivated by an objective fear that if the voluntary offer was not taken the separation from employment could later lead to a termination of employment, are not determinative of whether a claimant is eligible for unemployment benefits under the VLO Provision. Instead our focus is on whether the facts demonstrate that the separation was due to a claimant's acceptance of a "layoff."

Employer argues that Claimant's situation should be likened to that of an employee who has an option to retire based upon age and years of service. *See, e.g., Davila v. Unemployment Compensation Board of Review*, 926 A.2d 1287 (Pa. Cmwlth.2007) (discussing the Deferred Retirement Option Plan, or DROP, utilized by the City of Philadelphia, which requires an employee to apply to take part in the plan). This analogy is unpersuasive. The crucial difference under the Law is that an employee who chooses to retire based upon age and years of service in accordance with a policy, plan, program, contract, regulation, or statute can do so upon the employee's own initiative. This does not automatically mean that the employee is ineligible for unemployment compensation, but where the employee retires upon the employee's own initiative, the employee must demonstrate a necessitous and compelling reason for the separation in order to qualify for benefits. In contrast, where the employer comes to the employee and offers the employee the option of early retirement from an available position pursuant to a labor-management agreement, like in *Diehl*, or pursuant to an established employer plan, program or policy, the employer must demonstrate by substantial evidence that the early retirement offer was not a "layoff."

In the instant matter, the evidence demonstrated that the offer of early retirement was initiated at the will of Employer and accepted by Claimant, that Claimant accepted the offer from an available position, and that the early retirement offer was made pursuant to a plan established by Employer. (R. Item 17, Board H.T. at 7, 8–9.) This evidence, along with the evidence that Claimant was "otherwise eligible," created a presumption that Claimant was eligible for unemployment compensation under the VLO Provision. *Diehl*, 57 A.3d at 1222. The burden then shifted to Employer to demonstrate that the early retirement offer was not a "layoff." Employer failed to carry this burden.

The evidence in the record, the majority of which consists of the testimony of Employer's witnesses, clearly supports the Board's determination that the practical effect of Employer's plan was a layoff of Claimant. Employer's witness, Ms. Egan, testified that under the VERA plan, employees in various positions "were identified as the starting point for a restructuring effort within [Employer's] organization," as "surplus or positions that were no longer needed in the workforce." (R. Item 17, Board H.T. at 22.) One of the employees identified was Claimant. Over the course of Claimant's tenure, Employer had evolved to a strictly engineering employer. (*Id.* at 16, 17.) Claimant was not an engineer, but Claimant had evolved with the organization and was still considered a valued employee; his skills were not obsolete. (*Id.* at 16, 17, 33, 39.) However, being a senior statisti-

cian, rather than an engineer, Claimant was identified as a target for an early retirement offer. (*Id.*) Under the VERA, if an employee accepted the early retirement offer and the duties performed by that employee were still needed, other positions were "reshaped," meaning that the remaining duties were transferred to different positions or a new person was hired, such as a trainee, to take over those duties. (*Id.* at 8–9, 13–14, 21, 33.) This is what happened with Claimant's duties: an engineer was assigned to take over Claimant's duties, and a trainee was hired to fulfill duties previously assigned to that engineer. (*Id.* at 15.) A similar one to one replacement of personnel did not take place with each position that was abolished as a result of an employee's acceptance of the early retirement package. (*Id.* at 23.) Employer contends that its evidence that Claimant was considered a valued employee who would still be employed had he not taken the retirement offer and who was immediately replaced demonstrates that Claimant is ineligible for unemployment compensation benefits. However, this is simply a factual rehashing of the previously rejected legal argument. The evidence demonstrates that Claimant's separation was voluntary and that the separation was from an available position. The fact that Claimant's early retirement wasn't forced and that he could have remained in his position brings Claimant within the VLO Provision; it does not exclude him.

In addition to the VERA, Claimant was offered a voluntary separation incentive package or what is called a VSIP. (R. Item 9, Referee H.T. at 12.) Under Employer's plan, a VSIP can be offered to employees in order to avoid a RIF and it can be offered to help Employer reach restructuring or downsizing goals. (R. Item 17,

Board H.T. at 21–22.) The evidence showed that Employer was using the VERA and VSIP in order to redistribute work, skills, and expertise, as well as to create uniformity in the professional background of its personnel and to cut costs. (*Id.* at 32, 38.) The evidence demonstrates that Employer offered the VERA and VSIP in order to eliminate positions, redistribute employment duties, and replace high-seniority employees with less expensive employees; the early retirement package offered to Claimant was a "layoff."

Substantial evidence demonstrates that Claimant's unemployment was due to exercising the option of accepting a layoff from an available position pursuant to an established plan of Employer, and Claimant therefore remains eligible for unemployment compensation under the VLO Provision in Section 402(b) of the Law, 43 P.S. § 802(b). Accordingly, the order of the Board is affirmed.

## *ORDER*

AND NOW, this 12th day of December, 2014, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY Judge COHN JUBELIRER.

I respectfully dissent. I believe that Edward L. Hilferty, Jr.'s (Claimant) decision to terminate his employment by accepting Naval Surface Warfare Center Carderock Division's (Employer) voluntary early retirement plan does not constitute a layoff under the Voluntary Layoff Option Provision (VLO Provision) of Section 402(b) of the Unemployment Compensation (UC) Law (Law).[1] Thus, I would

---

1. Act of December 5, 1963, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.

reverse the Order of the UC Board of Review (Board) granting Claimant UC benefits.

The Board relied on *Diehl v. Unemployment Compensation Board of Review (ESAB Group, Inc.)*, 618 Pa. 592, 57 A.3d 1209 (2012), to reach its conclusion that Employer's workforce "reshaping" plan constitutes a layoff pursuant to the VLO Provision. I respectfully believe, however, that the Majority's affirmation of the Board's Order improperly expands the holding in *Diehl* to a situation not covered by the VLO Provision.

In *Diehl*, the employer announced a workforce reduction plan and issued a memo with a list of twenty employees who would be laid-off. *Diehl*, 57 A.3d at 1210. The memo, however, explained that up to ten of the employees on the list would be retained to fill vacancies resulting from employees accepting the employer's early retirement plan. *Id.* at 1210–11. Therefore, in conjunction with the employer's layoff plan, the employer also "offered employees over sixty years old an early retirement program to encourage high seniority employees to leave so that the less senior employees on the list would not be laid off." *Id.* at 1211. The claimant accepted the early retirement plan, which included a continuation of health insurance for five years and compensation for unused vacation days. *Id.*

The Supreme Court determined that if the claimant had not accepted the employer's early retirement offer, it was certain that "another less-senior employee would have been laid off and would have been eligible for unemployment compensation." *Id.* at 1222. Consequently, the Supreme

Court found "no language that prevents the interpretation of the term layoff to include *this* employer-initiated, early retirement package offered pursuant to a workforce reduction." *Id.* (emphasis added). The Supreme Court analogized Pennsylvania's VLO Provision to the provision in Arkansas which provides that an individual will not be disqualified for voluntarily participating "in a permanent reduction in the employer's workforce after the employer announced a pending reduction in its workforce and asked for volunteers." *Id.* (citing Ark.Code Ann. § 11–10–513(c)). Thus, the workforce reduction contemplated by the VLO Provision requires an employer layoff—a certainty that some employee will be involuntarily terminated by the employer—if the Claimant does not accept the early retirement offer.

In the instant case, the Board concluded that the Employer's plan to reduce personnel costs through "reshaping" the workforce had the "practical effect of being a 'workforce reduction.'" Accordingly, the Board found Claimant eligible for benefits based on the Supreme Court's holding in *Diehl*.

While the Board equates a reduction in personnel costs to a workforce reduction in order to find Claimant eligible for benefits, this conclusion expands the holding in *Diehl* beyond situations in which there would have been an actual layoff, as the VLO Provision requires. Unlike in *Diehl*, where the employee accepted early retirement so that other employees would not be laid-off, here there is no evidence that Claimant or any other employee would have been laid-off had Claimant not ac-

§ 802(b). The VLO Provision states:
Provided further, That no otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to exercising the option of accepting a layoff, from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy.
*Id.*

cepted the early retirement offer.[2] The fact that the total number of employees may have decreased after Claimant accepted the retirement plan is also not evidence of a layoff since the total number of employees can fluctuate due to other factors. Under the Board's reasoning, adopted by the Majority, the VLO Provision would apply to any situation where an employer attempts to reduce its personnel costs by encouraging employees to retire early, even if the employer does not otherwise plan to terminate any employees to accomplish the reduction. *Diehl,* however, does not support such a broad application of the VLO Provision. Because there is not substantial evidence in the record that Employer either laid-off or intended to layoff any of its employees had Claimant not accepted the early retirement offer, I believe that the Majority errs in affirming the Order of the Board.

For the foregoing reasons, I would reverse the Order of the Board.

---

[2] When Claimant was asked by the UC Referee in the evidentiary hearing whether his job would have still been available had he not accepted Employer's retirement plan, Claimant stated: "Absolutely. Yes." (Hr'g Tr. (February 7, 2013) at 7, R.R. at 48a.) Moreover, Employer corroborated that Claimant's job would have still been available had he not accepted the retirement plan. (Hr'g Tr. (February 7, 2013) at 12, R.R. at 53a; Hr'g Tr. (May 17, 2013) at 7, 10, R.R. at 110a, 113a). Importantly, Employer also stated that if Claimant had chosen not to retire, "no one else would have lost their job." (Hr'g Tr. (May 17, 2013) at 10, R.R. at 113a.) There is no evidence to the contrary in the record.