DISSENTING OPINION BY
JUDGE COHN JUBELIRER
At the stroke of midnight, at the instant the Unemployment Compensation Board of Review’s (Board) server’s clock moved from April 22, 2016 to April 23, 2016, Frederick W. Chapman’s (Claimant) appeal challenging the decision of an Unemployment Compensation Referee, arrived at that server. The Referee’s decision had been sent by mail to Claimant on April 7, 2016, and therefore his appeal had to be filed by April 22, 2016. The Board acknowledged in its Decision that Claimant sent his appeal at 11:59 p.m. on April 22, 2016. However, because the appeal was received at 12:00 a.m., April 23, 2016, the Board found Claimant’s appeal was untimely. (Board Decision at 2.) The majority affirms, but, under these unique circumstances, I respectfully disagree.
The date an appeal is sent can be used for determining the timeliness of an appeal filed by mail. In fact, the preferred order in determining the filing date of a mailed appeal is the. mailing date identified on the official U.S. Postal Service postmark or postage meter mark on the envelope containing the appeal, or a U.S. Postal Service Form 3817 or certified mail receipt, 34 Pa. Code § 101.82(b)(1). Only if the date mailed cannot be ascertained from one of these methods is the appeal considered filed when received. See also 34 Pa. Code § 101.82(b)(2) (using the date an appeal is delivered to.a common carrier if that date is “established by a document or other record prepared by the common carrier in the normal course of business”).
Had Claimant found a post office open at that hour, and had his appeal been postmarked at 11:59 p.m., it would have been timely. However,. because Claimant emailed his appeal, there is no postmark. Claimant did bring to the hearing his “Google time[]stamp” showing that the email Was sent at 11:59:46 p.m. on April 22, 2016.[1] (Claimant’s Petition for Appeal from Referee’s Decision with Attachments, R. Item 11, Board Exs. B9-B10; Email to Board -Requesting a Hearing on Timeliness, R. Item 13, Board Exs. B4-B5.) And, importantly, there is a time stamp from the Board’s aim server indicating receipt of the appeal at- 12:00 a.m.; the appeal thus had to have beén sent prior to 12:00 a.m. However, the Board’s regulations treat emailed appeals differently from mailed appeals by providing that the emailed appeals are filed when received, never when they are sent.
*1159 The majority justifies this difference with two explanations. It first posits that allowing the taking of an appeal by mail equalizes appellate access between those who were located near a Board office and those who are not because both could now go to a post office to file an appeal. Chapman v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1405 C.D. 2016, filed June 13, 2017), slip op. at 7. The person who went to the Board office would perfect the appeal when it was submitted to the filing office; the person who went to the post office could perfect the appeal when it was submitted to the mail delivery system. However, the majority does not convincingly explain why those who submit their appeal via computer likewise should not perfect their appeal when it is submitted to the electronic mail delivery system.
The majority also justifies the difference because, unlike a U.S. Postal Service postmark, which is easy to determine and deemed reliable, an electronically-placed time stamp is subject to manipulation. Id. (citing UGI Utilities, Inc. v. Unemployment Comp. Bd. of Review, 776 A.2d 344, 347 (Pa. Cmwlth. 2001); George v. Unemployment Comp. Bd. of Review, 767 A.2d 1124, 1128 n.8 (Pa. Cmwlth. 2001), overruled on other grounds by Diehl v. Unemployment Comp. Bd. of Review (ESAB Grp., Inc.), 618 Pa. 592, 57 A.3d 1209 (2012)). Whether or not electronically-placed time stamps may be subject to manipulation and, therefore, not reliable, is irrelevant to this case because there is no need to rely on the Google time stamp. Claimant’s appeal was received at 12:00 a.m. on April 23, 2016, and the transmission does not occur instantaneously. Claimant therefore necessarily had to have sent the appeal before 12:00 a.m., and thus it had to have been sent before midnight on April 22, 2016, the last day for timely filing his appeal.
Any perceived unreliability of time stamps from private fax or email systems is not applicable here because the focus is not on the Google time stamp, but on the Board’s time stamp. There can be no question in this unusual situation '• that Claimant in fact pressed the send button on his keyboard and in fact sent the appeal to the Board on the 15th day, as required by Section 502 of the Unemployment Compensation Law (Law).[2] The Board did not discredit Claimant’s evidence that he sent the email at 11:59 p.m. on April 22, 2016, or find that this evidence was unreliable. Instead, it concluded that, notwithstanding this evidence, it “ha[d] no discretion to use the sent time as the appeal date” because of its regulation. (Board Decision at 2.) Notwithstanding this, the practical and realistic approach I would use here is consistent with this Court’s precedent. See, e.g., Wright v. Unemployment Comp. Bd. of Review, 41 A.3d 58, 67 (Pa. Cmwlth. 2011) (reversing a Board decision that found a faxed appeal untimely because the claimant had presented uncontroverted evidence that he timely transmitted his appeal, although the appeal was not found in the Board’s records, and the Board had capriciously disregarded this uncontroverted evidence).
The majority cites Hanna v. Zoning Board of Adjustment of Pittsburgh, 62 Pa. Cmwlth. 620, 437 A.2d 115 (1981), as supporting its position. Hanna, however, emphasizes the importance of the public’s right to appeal an adverse government agency’s- determination.- There, a local agency did not identify the specific “mailing date” on its decision, although the decision itself was dated and that date was listed on an accompanying letter. Id. at 116. The appellant did not file his appeal *1160 timely, and so the appeal was quashed. Id. This Court reversed, holding that there is an implicit duty on an agency to advise the parties of the mailing date to ensure that an aggrieved party knows, with certainty, the time remaining in which to file an appeal or petition for review. Id. at 117 (citing Schmidt v. Commonwealth, 495 Pa. 238, 433 A.2d 456, 458 (1981)). I do not interpret a decision that imposes an affirmative duty on government agencies to provide the public with the date a decision is placed in the mail so that any appeal rights can be timely exercised, as requiring us to extinguish such rights.
Although I appreciate the majority’s concern that this approach would impact appeals filed under the Pennsylvania Rules of Appellate Procedure (Appellate Rules), I believe this approach is more consistent with those Rules than the majority’s. In Miller v. Unemployment Compensation Board of Review, 505 Pa. 8, 476 A.2d 364 (1984), our Supreme Court reversed an order of this Court quashing a petition for review because it had not been timely filed. The Court stated that it “ha[s] long refused to give overly technical, restrictive readings to procedural rules, particularly when remedial statutes such as the [Law] are involved” and that “[dismissals are particularly disfavored.” Id. at 366-67. Acknowledging that the petition did not comply with Appellate Rules, the Supreme Court “nevertheless reverse[d] on the peculiar facts of th[e] case.” Id. at 365. It held that
adherence to ... [jurisdictional] rules [regarding the timely filing of appeals that] prescriben the only evidence of timely mailing which will be acceptable should not result in dismissal if timeliness can be determined by reference to the internal records of the court, and petitioner’s counsel can bring the relevant facts and records which show timeliness to the court’s attention, without the necessity of an evidentiary hearing.
Id. (emphasis added). Accordingly, the Court concluded that
where the record shows clearly and without dispute that a petition for review was timely mailed prior to the 30-day jurisdictional deadline, where counsel for the appellant apprises the court of the record in that respect and timeless can be determined from an examination of the records of the court, a fair and just interpretation of our rules makes a dismissal improper.
Id. at 367. The conclusion that, based on the Board’s own internal records and the “peculiar facts” here, Claimant’s appeal had to have been “timely [e]mailed prior to the [15]-day jurisdictional deadline,” id. at 365, 367, is consistent with the principles espoused in Miller and would not impact, negatively or otherwise, the filing of appeals under the Appellate Rules.[3]
Because Claimant had to have submitted his appeal, as required by Section 502 of the Law, on the 15th day for it to have been time stamped as received precisely at 12:00 a.m. on the 16th day, I would hold that Claimant’s appeal was timely and, therefore, would remand for the Board to consider Claimant’s appeal. To do otherwise unnecessarily elevates form over substance and disregards the importance of allowing the public to utilize all means provided, within the full time period al *1161 lowed, to file an appeal. This is particularly true where the appeal period, 15 days measured from the date the decision is placed in the mail, is so brief and is rarely ever, due to the realities of the postal system, the full time period allowed by the Law. For these reasons, I respectfully dissent.

. The Board stated in its decision that Claimant presented evidence that he sent the email at 11:59 p.m. on April.22, 2016. (Board Decision at 2.)

. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 822.

. Although Miller has not been extended to the Board’s unemployment compensation regulations, see Gannett Satellite Information Network, Inc. v. Unemployment Compensation Board of Review, 661 A.2d 502, 504-05 (Pa. Cmwlth. 1995) (holding that Miller does not apply to appeals filed pursuant to administrative agency regulations), I believe that a similar practical and realistic approach has been recognized in unemployment compensation appeals under the Board's regulations. See, e.g., Wright, 41 A.3d at 67.