**[J-1-2021] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| CAITLIN QUIGLEY, | : | No. 20 EAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | January 28, 2020 at No. 1449 CD |
| v. | : | 2017 vacating/remanding the Order |
| | : | of the Unemployment Compensation |
| | : | Board of Review entered on August |
| UNEMPLOYMENT COMPENSATION | : | 8, 2017 at No. B-17-09-G-2764. |
| BOARD OF REVIEW, | : | |
| | : | ARGUED: March 9, 2021 |
| Appellant | : | |

**CONCURRING OPINION**

**JUSTICE DOUGHERTY**                         **DECIDED: November 17, 2021**

I fully join the majority opinion, and particularly its careful reading of the Unemployment Compensation Law, 43 P.S. §§751-919.10 (UC Law), and related regulations promulgated by the Department of Labor and Industry (Department) and the Unemployment Compensation Board of Review (Board). I write separately to respectfully buttress the majority's analysis in light of the distinctive standard of review applicable to administrative matters.

Unlike typical judicial appellate review for an abuse of discretion, our standard for reviewing appeals of administrative decisions draws from the statutory mandates of Section 704 of the Administrative Agency Law (Agency Law), which annunciates the parameters of an appellate court's final disposition. Specifically, "[w]e must affirm [the Board's] adjudication unless we determine that: it violates the appellant's constitution[al] rights; it is not in accordance with law; **it was reached in violation of applicable**

**administrative procedure**; or any fact necessary to the decision is not supported by substantial evidence." *U.S. Steel Corp. v. UCBR*, 858 A.2d 91, 99 (Pa. 2004) (emphasis added), *citing* 2 Pa.C.S. §704; *see also, e.g., Diehl v. UCBR*, 57 A.3d 1209, 1216 (Pa. 2012) ("[W]hen reviewing unemployment compensation cases, an appellate court must consider whether the findings of fact are supported by substantial evidence and whether there was a violation of the constitution or agency procedure or an error of law.") (citation and internal quotation omitted).

The violation of an "applicable administrative procedure" relates not only to an agency's particular enabling statutes and regulations, but also to traditional principles of procedural due process. These are further codified in Section 504 of the Agency Law, which requires reasonable notice, a fair opportunity to be heard on the merits of the appeal, and a full and complete record. *See J.F. v. Dep't of Human Servs.*, 245 A.3d 658, 668-69, 673 (Pa. 2021), *citing* 2 Pa.C.S. §§504, 704.

The majority and concurring opinions have described in depth the manner in which the Department's and Board's actions have made the requisite meaningful notice and an opportunity to be heard inaccessible to this claimant. *See* Majority Opinion, slip op. at 34-35; Concurring Opinion, slip op. at 1-5 (Wecht, J.). Additionally, the Department, with its investigatory powers and duties to require the reports and records it deems necessary, *see* 43 P.S. §761, bears some responsibility for ensuring the record is complete.

Through the initial claim review process, the Department directs what information is necessary to support a claimant's eligibility. Here, because Claimant completed the Department's questionnaire specific to sideline business claimants, the Department informed her, via email and on the questionnaire itself, that the additional information necessary to support her eligibility was the Schedule C from her 2016 tax return, which she provided immediately. *See* Claimant Questionnaire, 4/11/17, at 2; UC Service Center

Email, 4/11/17. The Department also required, under penalty of fraud, Claimant's dates of service at her last full-time employer, her responses to several yes or no questions regarding amounts of her time and income related to her sideline business, and her social security number, for use by the Department to verify her information. *See* Claimant Questionnaire, 4/11/17, at 1-3. Notably, in accord with its own regulations, the Department "will not issue a decision invalidating a claim until the claimant has been given an opportunity to refute any alleged facts or circumstances which are being considered as a basis for invalidating his claim." 34 Pa. Code §65.61. And, under the UC Law, upon the Department's determination of whether or not a claim is valid, "**[n]otice of such determination need not be given to the claimant if the claim is determined valid, but if the claim is determined invalid, notice shall be given by the department in writing to the claimant stating that the claim is invalid and the reason therefor**." 43 P.S. §821(c)(2) (emphasis added). Claimant provided all of the information the Department deemed necessary to support her eligibility; presumably the Department performed its verification, no challenge was raised to the accuracy of the information Claimant provided, and because the claim was determined valid, claimant had no notice of any defects in her application that would warrant the later disqualification of her eligibility.

The Department then certified the contents of the claim file, upon which the referee and Board based their review. Notably, the Board's own regulations require the referee to provide unrepresented parties with "every assistance compatible with the impartial discharge of its official duties." 34 Pa. Code §101.21(a). In this case, among the first annotations at the top of Claimant's claim record is an entry dated April 21, 2017, stating, "[Claimant] IS REQUESTING CONTACT BE MADE BY EMAIL; PHONE WILL BE DISCONNECTED FOR APPROX 3 WEEKS[.]" Claim Record at 1. Claimant's

continuance request was made on May 1 via email, to the email address provided in the Notice of Hearing as an appropriate means of contact. *See* Notice of Hearing, 4/26/17 at 3; Email to Referee, 4/30/17. The referee called Claimant's disconnected phone number and left a message indicating the continuance would be denied without further information. In my view, a brief glance at the claim record should have alerted the referee that a telephonic response to Claimant's request would not be received prior to the scheduled hearing, and failed to provide minimal assistance compatible with the impartial discharge of the tribunal's duties.

Lastly, the Board believes it was required to disqualify Claimant because, as it claims, the only competent evidence of record was Claimant's checkmark in the "Yes" box on her sideline business questionnaire, to answer the question "Do you own all aspects of this business?" — while the remainder of the information in the claims file constituted "uncorroborated hearsay." Appellant's Brief at 36-37; Claimant Questionnaire at 1. As the majority observes, the Department's tribunals are entitled to rely on information contained in the Department's own records. Majority Opinion, slip op. at 32-33 n.12, *citing* 34 Pa. Code §101.51. I additionally observe the Department may do so as a result of its power and duty to collect and **verify** the essential information. In this regard, it is difficult to see how the information provided by Claimant was "uncorroborated." *See Vann v. UCBR*, 494 A.2d 1081, 1086 (Pa. 1985) (hearsay evidence admitted without objection may support a finding of fact if corroborated). As a result, absent any additional evidence offered by the Department to the contrary, I do not view the Board's sole finding of fact justifying its decision to disqualify Claimant — *i.e.*, "[t]he claimant owned and operated an independent business[,]" Board Decision, 8/8/17, at 1 — as supported by substantial evidence.

Accordingly, for the foregoing reasons, as well as those articulated by the majority, I conclude the Board reached its decision based upon violations of applicable administrative procedure, and the decision was not supported by substantial evidence. Though the dissenting opinions authored by my learned colleagues may appear to offer a facially reasonable alternate reading of the statute and regulations, in my respectful view, such an interpretation does not account for due process in cases where the claimant (experiencing the sudden burden of economic insecurity and its attendant obstacles, such as, plausibly, the loss of phone service) and the tribunal responsible for providing due process (benefitting from the expertise of a complement of attorneys, *see* Appellant's Brief at 11, 21) are ships passing in the night, given the claimant's communication of her limitations at every step.[1]  In such matters, the Board's duty to protect the Unemployment Compensation Trust Fund from improper claims and unintended purposes is not effectuated through discretionary decisions that evade due process, which has the foreseeable consequence of diverting those reserves from their intended recipients by denying qualifying claims and prolonging litigation.

---

[1] To the extent any inference about the timeliness of Claimant's continuance request may be drawn from the fact the request was made on April 30, 2017, *i.e.*, nine days before the scheduled May 9, 2019 hearing, I note the record also indicates the Notice of Hearing was mailed out to Claimant on April 26, 2017, four days prior to her request; it therefore appears she made her continuance request immediately following receipt of the Notice. *See* Notice of Hearing, 4/26/17, at 1.