IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A.S. and R.S.,       : **CASES CONSOLIDATED**
      Petitioners  : **CASES SEALED**
            :
    v.        : Nos. 1030, 1031 C.D. 2022
            : Argued:  April 13, 2026
Department of Human Services,  :
      Respondent  :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
      HONORABLE MATTHEW S. WOLF, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER   FILED:  June 29, 2026


   A.S. and R.S. (together, Petitioners) petition this Court for review of the September 1, 2022 Final Order (Final Order) of the Pennsylvania Department of Human Services (Department), Bureau of Hearings and Appeals (BHA), adopting the Administrative Law Judge's (ALJ) Adjudication.[1]  The ALJ determined that Petitioners did not timely file administrative appeals of the Department's July 15, 2021 indicated reports of child abuse (indicated reports) on the ChildLine and Abuse Registry (ChildLine),[2] and that *nunc pro tunc* relief was not warranted.  Petitioners'

---

[1] The BHA issued a single Final Order for Petitioners' separate appeals, as reflected by the BHA's use of the two docket numbers for those appeals.  By Order dated June 13, 2025, this Court consolidated the appeals.

[2] "ChildLine, a unit within the Department . . . , operates a statewide system for receiving indicated and actual reports of child abuse; refers the reports for investigation; and maintains the reports for reference."  *In re S.H.*, 96 A.3d 448, 450 n.2 (Pa. Cmwlth. 2014); *see also* 55 Pa. Code § 3490.4 (providing the definition of "ChildLine").  "The ChildLine Registry is maintained in

counsel contends that he both faxed the appeals to the BHA and ChildLine, and mailed the appeals to the BHA and ChildLine, and that the delay was caused by an administrative breakdown or non-negligent circumstances. Upon careful review and under the unique circumstances of these matters, *nunc pro tunc* relief was warranted. Therefore, we reverse the Final Order and remand for the BHA to conduct proceedings on the merits of Petitioners' administrative appeals of the indicated reports.

## I. BACKGROUND

At issue is whether Petitioners established that *nunc pro tunc* relief was appropriate, which would allow their administrative appeals to be heard by the BHA; the merits of the indicated reports are not before this Court. On April 24, 2021, an incident report was sent to ChildLine naming Petitioners as possible perpetrators. (Reproduced Record (R.R.) at 1a-2a, 7a-9a.) An investigation was conducted and Petitioners were found to be "indicated" as perpetrators of child abuse. (*Id.*) Although the CY-48 forms were filed on June 7, 2021, the Department did not send the notices informing Petitioners that they were "indicated" as perpetrators of child abuse until July 15, 2021.[3] (Finding of Fact (FOF) ¶ 1; R.R. at 3a-4a, 10a-11a.) According to Petitioners' Counsel,[4] the investigator stated that there was a delay in getting the letters mailed because, during the COVID-19 pandemic, mail was only mailed out once every two weeks at the Department. (Petitioners' Brief (Br.) at 9.) The notices instructed Petitioners that they had 90 days from the date of mailing, or

accordance with the Child Protective Services Law, 23 Pa.C.S. §§ 6301-6386." *In re S.H.*, 96 A.3d at 450 n.2.

[3] A single investigation report naming both Petitioners appears to have been issued, but separate notices were issued and separate appeals were filed.

[4] Counsel's account was provided during the telephonic ALJ hearing and in the Petitioners' Brief.

by October 13, 2021, to file the appeal forms, which were enclosed. (FOF ¶¶ 3, 8; R.R. at 6a, 13a.)

Petitioners' Counsel claims that immediately upon receipt, Petitioners emailed the notices to him. Petitioners' Counsel wrote individual letters for both Petitioners, stating they were appealing the indicated reports and requesting a hearing, and completed the appeal forms, which he sent to Petitioners for their review and signature. One week later, Petitioners had returned to their counsel the signed letters he had prepared and the signed appeal forms, which were enclosed in the notices. (*Id.* ¶ 6; R.R. at 5a-6a, 12a-13a; Petitioners' Br. at 10.) Petitioners' Counsel further claims that, on July 22, 2021, he both faxed and mailed the appeals to the BHA and ChildLine seeking to appeal the notices, and he had fax confirmations of such. (Petitioners' Br. at 10.) The fax confirmations identified July 22, 2021, as Thursday rather than Wednesday, which that date was. (Adjudication at 10.) The fax confirmations also showed 4 pages, or 240 kilobytes were successfully transmitted. (R.R. at 14a-17a.) When Counsel did not receive anything from ChildLine or the BHA, he states he filed entries of appearance in February 2022. (FOF ¶¶ 9-10.) According to Petitioners' Counsel, on March 29, 2022, he received a call asking why he filed entries of appearance and was asked to produce the appeal requests and fax confirmations, which he sent to the BHA while on the phone that day. (*Id.* ¶ 11; Petitioners' Br. at 11.)

On July 11, 2022, the ALJ held a telephonic hearing on the timeliness issue in which Petitioners' Counsel, the Department's Counsel, and the Department's witness, the ChildLine Appeal Unit Supervisor (ChildLine Appeals Supervisor), participated. Petitioners' Counsel stated that he mailed and faxed the appeal forms and accompanying letters to the BHA and ChildLine well within the statutory appeal

window, with the faxed materials being sent to two separate fax numbers. (Hearing Transcript (Tr.) at 8-14.[5]) Petitioners' Counsel presented two exhibits, the two separate fax confirmations showing they were faxed to fax numbers 717-772-2769 and 717-525-5367 on July 22, 2021, the numbers for the BHA and ChildLine, respectively. (*Id*. at 10-11.) Petitioners' Counsel additionally described his interactions with the Department as previously set forth.

The ChildLine Appeals Supervisor was called on direct examination by the Department and testified about the procedures ChildLine uses for receiving faxes and that the BHA received Petitioners' appeal on March 29, 2022, after the appeal period had closed. (*Id*. at 17-18.) It appears that during this hearing, Petitioners' Counsel was also in trial and was called away from the hearing without time for cross-examining the witness or a closing argument. (*Id*. at 21-22.) Nonetheless, at the conclusion of the hearing, the Department **did not oppose** the timeliness of the appeal, nor did it allege any prejudice because of the delay. (*Id*. at 21.) In closing, the Attorney for the Department stated,

> Judge, it appears clear that ChildLine never received the appeal documents necessary to start the appeal process. However, [Petitioners' Counsel] has provided a document establishing that **he certainly did send them or attempt to send them**. We have no explanation as to why they did not arrive, but **we are willing to accept [Petitioners' Counsel's] recommendation that he did** - as an officer of the court.

(*Id*.) (emphasis added).

On July 20, 2022, the ALJ issued the Adjudication, recommending dismissal of the appeal as untimely and further finding that Petitioners did not demonstrate

---

[5] The Hearing Transcript is found in the Reproduced Record beginning on page 41a.

sufficient grounds for *nunc pro tunc* relief.[6] (R.R. at 36a.) The ALJ found that while Counsel wrote the appeal letters on July 22, 2021, Counsel did not fax or mail them, and 257 days passed before any appeals were received by the BHA on March 29, 2022. (FOF ¶¶ 6-7, 11.)

The ALJ addressed whether Petitioners established timely filing through mailing or faxing of the appeal forms, and whether Petitioners demonstrated that *nunc pro tunc* relief was appropriate. The ALJ determined that Petitioners did not present sufficient substantial evidence showing that the appeal forms were actually mailed to ChildLine or the BHA, just that the appeal forms were prepared by Counsel. (Adjudication at 9 (citing *Douglas v. Unemployment Comp. Bd. of Rev.*, 151 A.3d 1188, 1192 (Pa. Cmwlth. 2016), and *Pinnacle Health Hosp. v. Unemployment Comp. Bd. of Rev.*, 210 A.3d 1127, 1133 (Pa. Cmwlth. 2019)).) The ALJ did not find the faxed appeal form confirmations reliable. (*Id*. at 10 (citing *Mountain Home Beagle Media v. Unemployment Comp. Bd. of Rev.*, 955 A.2d 484, 487 (Pa. Cmwlth. 2008), and *George v. Unemployment Comp. Bd. of Rev.*, 767 A.2d 1124, 1128 (Pa. Cmwlth. 2001), *overruled on other grounds*, *Diehl v. Unemployment Comp. Bd. of Rev. (ESAB Grp., Inc.)*, 57 A.3d 1209 (Pa. 2012)).) The ALJ also found that *nunc pro tunc* relief was not appropriate under these circumstances. Thus, the ALJ recommended that the BHA deny *nunc pro tunc* relief and dismiss the appeal. (*Id*. at 12-13.)

On September 1, 2022, the BHA issued the Final Order adopting the ALJ's Adjudication in its entirety and dismissing the appeal as untimely. (R.R. at 38a.) Petitioners sought reconsideration of the Final Order from the Secretary of Human

---

[6] A copy of the ALJ's Adjudication appears in the Reproduced Record beginning at page 25a.

Services, which was denied.  (*Id*. at 39a-40a.)  Petitioners timely petitioned this Court for review.

## II.  PARTIES' ARGUMENTS

On appeal, Petitioners argue that Counsel timely filed the appeal forms by both mailing and faxing the forms to the BHA and ChildLine well within the 90-day appeal window.  Petitioners claim that the BHA's and ChildLine's failure to receive both faxed appeal forms was due to the BHA's and ChildLine's own negligence and an administrative breakdown, not Counsel's failure to timely transmit the appeal forms.  Petitioners assert that this administrative breakdown was due, in part, to COVID-19 because the Department's physical office was closed and there were no Department staff available with whom to communicate.  (Petitioners' Br. at 16-17.)  According to Petitioners, the ALJ and BHA never considered whether the BHA and ChildLine lost the appeal forms, and it is more likely that both entities lost the appeal forms rather than a transmission mistake by Counsel.  (*Id*. at 17.)

In the alternative, Petitioners contend that they were not negligent, but rather unforeseeable and unavoidable events precluded Petitioners from timely filing the appeal forms because they trusted the United States Postal Service (USPS) to deliver the appeal forms and USPS failed to deliver same.  (*Id*. at 20-21.)  Moreover, in Petitioners' view, their utilization of two forms of service – mailing and faxing the appeal forms – in addition to transmitting the appeal forms well in advance of the 90-day deadline, coupled with the difficulty communicating with the BHA and ChildLine during the COVID-19 pandemic, collectively establish that Petitioners or their Counsel were not negligent.  (*Id*. at 21-22.)

The Department responds that Petitioners failed to provide evidence that the appeal forms were timely mailed through USPS or that USPS somehow failed to

deliver them to the BHA or ChildLine. (Department's Br. at 7-8.) The Department also argues that Petitioners failed to provide evidence that the appeal forms were faxed to the BHA and Childline, beyond speculative assertions that the Department was somehow shutdown during COVID-19 or lost the forms. (*Id*. at 9.) The Department also asserts that regardless of Petitioners' speculative assertions, the fax confirmations presented by Petitioners contain the wrong day of the week. (*Id*.) Taken together, the Department argues that Petitioners' proffered reasons did not evidence actual mailing or faxing of the appeal forms and were properly rejected as not credible by the ALJ and the BHA.

As to whether *nunc pro tunc* relief was warranted, the Department responds that there was no administrative breakdown because, while the Department's physical offices were closed during COVID-19, the Department was still functioning virtually. It argues that Petitioners presented no evidence that they had contacted the BHA or ChildLine and that such contact attempts went unanswered. (*Id*. at 14.) In addition, as to non-negligent circumstances, the Department asserts that Petitioners' arguments that USPS failed to deliver the appeal forms, and that the BHA and ChildLine lost the appeal forms, lack merit because Petitioners did not present any evidence supporting these assertions. (*Id*. at 11-12.) As such, the Department concludes that the ALJ and BHA properly determined that Petitioners' appeal forms were untimely, depriving the BHA of jurisdiction, and, therefore, requests that the Court affirm the Final Order.

7

## III. DISCUSSION[7]

At issue is whether Petitioners were entitled to have their appeals considered *nunc pro tunc*. It is Petitioners who bear the burden of establishing their entitlement to *nunc pro tunc* relief. *See Wright v. Unemployment Comp. Bd. of Rev.*, 41 A.3d 58, 62 n.5 (Pa. Cmwlth. 2011) (stating that the appealing party had the burden of proving the timeliness of their appeal); *Angels of Care by TLM, LLC v. Dep't of Hum. Servs.*, 323 A.3d 250, 258 (Pa. Cmwlth. 2024) (*Angels of Care*) (holding that the burden to prove an entitlement to *nunc pro tunc* relief is on party seeking to appeal). A party seeking permission to file a *nunc pro tunc* appeal "has the burden of establishing (1) [they] filed the appeal within a short time after learning of and having an opportunity to address the untimeliness; (2) the elapsed period of time is of short duration; and (3) the respondent is not prejudiced by the delay." *R.H. v. Dep't of Hum. Servs.*, 205 A.3d 410, 414 (Pa. Cmwlth. 2019). In the context of human services appeals,

> [a]n appeal *nunc pro tunc* is only warranted . . . in extraordinary circumstances involving fraud or some breakdown in the [agency's] operation, or where the delay is caused by non-negligent circumstances either by the [petitioner, their counsel,] or a third party. [Administrative breakdown occurs] when an administrative body acts negligently, improperly or in a misleading way. Where non-negligent circumstances cause the untimeliness of an appeal, the appeal must be filed within a short period of time after learning of the untimeliness. It is well[ ]settled that the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to file the appeal, and the burden is a heavy one.

---

[7] "Our review of a [Department] adjudication is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the [Department] erred as matter of law or whether the Department violated a party's constitutional rights." *R.H. v. Dep't of Hum. Servs.*, 205 A.3d 410, 415 n.1 (Pa. Cmwlth. 2019) (citation omitted).

*Angels of Care*, 323 A.3d at 258 (quoting *Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 1223, 1229-30 (Pa. Cmwlth. 2021)) (brackets added and in original).

Petitioners and their Counsel immediately, upon receipt of the notices, prepared appeals, which were both faxed and mailed in an effort to ensure receipt. However, having not received anything related to the appeals he filed, Petitioners' Counsel entered his appearance on February 10, 2022, and during a March 29, 2022 phone call with the Department, Petitioners' Counsel was told by the Department that there were no active appeals. (FOF ¶¶ 9-10; Petitioners' Br. at 11.) Petitioners' Counsel inquired as to the status of the appeal forms that were mailed and faxed and was instructed that no appeal forms had been received. **Immediately**, while he was on the phone with the Department, on March 29, 2022, he faxed and the Department received the appeal forms that Petitioners' Counsel resubmitted. (*Id.* ¶ 11.) Petitioners and their Counsel thus proceeded with reasonable diligence in the instant matter.

In addition, during the administrative proceedings, the Department did not allege any prejudice by the delay in receiving the appeal forms. As such, under the three-prong analysis in *R.H.*, Petitioners satisfied their burden of demonstrating that the time between when Counsel learned that the Department had not received the appeal forms, and Counsel's filing of the appeal forms, was short in duration, and the Department was not prejudiced by this delay.

We turn to whether there was either a breakdown in the administrative process or non-negligence that led to the appeal forms not being timely received in the first instance. As discussed above, Petitioners and their Counsel acted promptly upon receipt of the notices in an effort to appeal the determinations. Within a week of the 90-day appeal period, appeals were faxed and mailed to both the BHA and

9

ChildLine. Petitioners produced fax confirmation sheets showing documents were **successfully** transmitted. (R.R. at 15a,17a.) The ALJ determined the fax confirmation sheets were unreliable since they reflected July 22, 2021, was a Wednesday, when it was a Thursday. While fax transmission sheets alone may not be sufficient, *Mountain Home Beagle Media*, 955 A.2d at 487, here, there is further evidence of record reflecting the appeals were transmitted via fax on July 22, 2021. In addition to the fax confirmation sheets, the record contains what appear to be emails by which the faxes were transmitted, which corroborates they were sent Thursday, July 22, 2021. (R.R. at 14a, 16a.) Finally, the cover letters and appeal forms all bear a July 22, 2021 date, further supporting a July 22, 2021 filing date.

We cannot conclude Petitioners or their Counsel acted negligently under the circumstances. This is not a case in which the appeals were transmitted last minute such that they should not have been received in ample time before the deadline expired. For unknown reasons, the faxes and/or letters were not received, but the one thing that is clear is that Petitioners and their Counsel were not negligent.

This alone is sufficient grounds to grant Petitioners *nunc pro tunc* relief. However, we briefly opine on another reason, which adds further support for the relief being granted. Here, it is undisputed that the Department's physical offices **were closed** for some time during COVID-19 and that the Department's staff was only sporadically checking the fax machines where faxed appeal forms would be sent. It bears emphasis that the Department **expressly accepted Petitioners' Counsel's statements**, as an officer of the court, that he mailed and faxed the appeal forms to the BHA and ChildLine, and there was no explanation as to why they were never received. (Hearing Tr. at 21.) Through this implicit conduct, the Department

10

acquiesced that there may have been an administrative breakdown in receiving the appeal forms transmitted by Petitioners' Counsel.

Based upon this very unique set of facts, where there are fax confirmations corroborated by other evidence of transmission well within the appeal period, and an acceptance by counsel for the Department as to the acts of Petitioners' Counsel, we hold that Petitioners are entitled to *nunc pro tunc* relief before the BHA.

## IV. CONCLUSION

For the foregoing reasons, we conclude *nunc pro tunc* relief is warranted before the BHA. Accordingly, we reverse the Final Order and remand this matter for the BHA to conduct a hearing on the merits of Petitioners' appeals of the indicated reports.

_____
RENÉE COHN JUBELIRER, President Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.S. and R.S., | : | **CASES CONSOLIDATED** |
| Petitioners | : | **CASES SEALED** |
| | : | |
| v. | : | Nos. 1030, 1031 C.D. 2022 |
| | : | |
| Department of Human Services, | : | |
| Respondent | : | |

# **O R D E R**

**NOW**, June 29, 2026, the Final Order of the Department of Human Services, Bureau of Hearings and Appeals (BHA), dated September 1, 2022, is **REVERSED** and this matter is **REMANDED** to the BHA to conduct proceedings on the merits of A.S.'s and R.S.'s appeals of the indicated reports.

Jurisdiction relinquished.

_____
RENÉE COHN JUBELIRER, President Judge